United States District Court
Southern District of Texas
**ENTERED**
July 30, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| OSCAR GENEROSO HERRERA ARREDONDO | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:26-cv-370 |
| | § | |
| MARKWAYNE MULLIN[1] *et al.* | § | |

## ORDER

Petitioner, an undocumented alien, brings this 28 U.S.C. § 2241 writ of habeas corpus, challenging the constitutionality of his detention (Dkt. Nos. 1, 8-1). After careful review of the parties' briefing and applicable law, Petitioner's Writ of Habeas Corpus (Dkt. Nos. 1, 8-1) is **GRANTED IN PART**. Respondents' Motion for Summary Judgment is **DENIED** (Dkt. No. 9).

## I. BACKGROUND

Petitioner is a Mexican national who entered the United States in July 2010 (Dkt. No. 8-1 at 7, ¶ 1). He married a United States citizen ten years ago and is the stepfather to six citizen children (Dkt. No. 8-1 at 7, ¶ 1; 14, ¶ 23). In March 2024, the Government bestowed him a work authorization, which is valid until 2029 (Dkt. No. 8-1 at 14, ¶ 22). Notwithstanding the Government's prior knowledge of Petitioner in this country, he was detained on December 23, 2025, at an immigration check point (Dkt. No. 8-1 at 14–15, ¶ 24). He has no appreciable criminal history—but remains detained at the Rio Grande Processing Center without a bond hearing or any individualized determination of his

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Todd Blanche is automatically substituted for Respondent Pamela Bondi in this case. David Venturella is substituted for Respondent Todd Lyons under this same rule. The Clerk of Court is **DIRECTED** to substitute these parties on the docket sheet.

dangerousness or flight risk (Dkt. No. 8-1 at 15, ¶¶ 24–25). Respondents put forth that they can detain Petitioner regardless of his individualized characteristics, as he is subject to mandatory confinement under 8 U.S.C. § 1225(b)(2)(A) (Dkt. No. 9 at 3). Petitioner brought this instant habeas action, contesting his prolonged detention (Dkt. Nos. 1, 8-1).

## II. LEGAL STANDARD

### A. 28 U.S.C. § 2241

Pursuant to 28 U.S.C. § 2241, a district court may grant a writ of habeas corpus to a petitioner in federal custody in violation of the Constitution or federal law. Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001) (citations omitted), *superseded by statute on other grounds*, Real ID Act of 2005, H.R. 418, *as recognized in Nasrallah v. Barr*, 590 U.S. 573 (2020). Accordingly, challenges to immigration-related detention are within a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### B. Motion for Summary Judgment

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (citations omitted). Federal Rule of Civil Procedure 56 provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute of material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. DISCUSSION[2]

### A. *Buenrostro-Mendez* Does Not Foreclose Petitioner's Due Process Claim

Two statutes principally govern detention of undocumented aliens pending removal proceedings: 8 U.S.C. §§ 1225, 1226.[3] The Fifth Circuit determined in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) that undocumented aliens present in the United States without being admitted by immigration authorities are mandatorily detained pursuant to § 1225(b)(2). *Id.* at 498, 507–08. But *Buenrostro-Mendez*'s holding was cabined to statutory interpretation. *Id.* As Petitioner challenges the constitutionality of his detention under the Due Process Clause as applied to him,

---

[2] At the outset, the Court acknowledges that it previously ruled that detention pending deportation under § 1225(b)(2) did not violate procedural due process. However, since then, the Fifth Circuit addressed the same question and reached a different conclusion. *See Rodriguez v. Ortega*, No. 26-50183, 2026 WL 1906557, at *15 (5th Cir. July 2, 2026), *reh'g en banc granted, opinion vacated sub nom. Sosnava Rodriguez v. Ortega*, No. 26-50183, 2026 WL 2014647 (5th Cir. July 10, 2026). This Court is not inexorably bound by its prior decisions, retains the discretion to depart from them when appropriate, and, therefore, writes anew in light of *Rodriguez*. *Camreta v. Greene*, 563 U.S. 692, 701 n.7 (2011) ("A decision of a federal district court judge is not binding precedent . . . even upon the same judge in a different case."); *see also United States v. Cisneros*, 456 F. Supp. 2d 826, 839 (S.D. Tex. 2006) (a district court may consider a vacated Court of Appeals decision as persuasive authority); *see also Cheejati v. Blinken*, 106 F.4th 388, 395 (5th Cir. 2024) (noting a vacated opinion had persuasive reasoning), *cert. denied,* 145 S. Ct. 1126 (2025).

The Court also recognizes the Fifth Circuit issued a stay of the three individual district court judgments in *Rodriguez*. *Rodriguez v. Ortega*, No. 26-50183, 2026 WL 2104747, at *1 (5th Cir. July 21, 2026). "An interim order granting a stay is 'not conclusive as to the merits,' but may 'inform how a court should exercise its equitable discretion in like cases.'" *Guerra Estrada v. de Anda Ybarra*, No. EP-26-CV-1897-KC, 2026 WL 2168090, at *1 (W.D. Tex. July 28, 2026) (quoting *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025)). Here, the Court sees no valid reason to read into the stays or allow them to inform its decision for this as-applied constitutional challenge. *See United States v. Morgan*, 147 F.4th 522, 526 (5th Cir. 2025) (an as-applied challenge hinges on the specific individual's activity), *cert. denied*, 146 S. Ct. 1781 (2026).

[3] Under § 1225(b)(2), an undocumented alien "who is an applicant for admission" shall be detained pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." Conversely, § 1226(a)(2) grants the Attorney General discretion to issue bond for undocumented aliens.

*Buenrostro-Mendez* does not resolve this case. *See Bonilla Chicas v. Warden*, 821 F. Supp. 3d 782, 791 (S.D. Tex. 2026) (Saldaña, J.); *Singh v. Bondi*, No. SA-26-CA-00541-XR, 2026 WL 752457, at *4 (W.D. Tex. Mar. 16, 2026) (Rodriguez, J.); *Rodriguez*, 2026 WL 1906557, at *3.

Respondents nonetheless argue that Petitioner's claim starts and ends with § 1225(b)(2)'s text (Dkt. No. 9 at 3). But "[s]tatutes do not override the Constitution, of course, so [courts] must continue to enforce substantive constitutional rights regardless of statutory language." *Rodriguez*, 2026 WL 1906557, at *7. As the *Rodriguez* Court found, "[t]he Constitution, after all, is supreme, with statutes needing to conform to its dictates, not the Constitution to statutes." *Id.* at *4 (citation modified); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (if due process applies the statute does not dictate what process is due). With that in mind, the Court turns to the constitutional questions.

**B. Due Process**

*1. Petitioner is Entitled to Procedural Due Process Protections*

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Undocumented aliens enjoy due process rights "whether their presence [in the nation] is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see also Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("The Fifth Amendment . . . protects [aliens] from deprivation of life, liberty, or property without due process of law."). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary

governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation omitted); *see also Zadvydas*, 533 U.S. at 690. Respondents nonetheless claim *Demore v. Kim*, 538 U.S. 510 (2003) and *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020) dictate Petitioner's due process rights.

a. *Demore*

Respondents assert *Demore* is on point as "[d]etention during removal proceedings is a constitutionally permissible part of that process" (Dkt. No. 9 at 3 (citing 538 U.S. at 531)). But *Demore*'s holding is not boundless. For starters, the statutes at play are the most obvious distinction. Under 8 U.S.C. § 1226(c), "Congress could mandate no bail detention of 'a subset of deportable criminal aliens.'" *Rodriguez,* 2026 WL 1906557, at *11 (quoting *Demore*, 538 U.S. at 521). The Supreme Court rejected a facial challenge to § 1226(c) as it "served the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings," premised on evidence suggesting that criminal aliens posed a greater flight risk. *Id.* (citing *Demore*, 538 U.S. at 527–28); *see also Bonilla Chicas*, 821 F. Supp. 3d at 795. Further, the *Demore* Court emphasized the relatively short detention period: "[T]he detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases." 538 U.S. at 530.

In contrast, Petitioner is subject to mandatory detention under § 1225(b)(2)(A), which applies *solely* based on his status as an "applicant for admission." Unlike § 1226(c) detention, which contemplated *inherent risk* of flight and dangerousness for criminal aliens, detention under § 1225(b)(2) takes *nothing* into account as applied to Petitioner: Not Petitioner's ties to the community, or that he does constitute a danger or flight risk. *See Bonillas Chicas*, 821 F. Supp. 3d at 796. Equally important, Petitioner has already

been detained for **<u>219 days</u>** with no end in sight, not "roughly a month and a half." *Demore* has no direct impact on Petitioner's due process challenge.

b. *Thuraissigiam*

Invoking the Supreme Court's opinion in *Thuraissigiam*, Respondents urge that aliens without admission only possess procedural due process rights Congress has afforded by statute, and here, it authorized for Petitioner's detention without bond under § 1225(b)(2) (Dkt. No. 9 at 7 (citing 591 U.S. at 139–40)); *see also Buenrostro-Mendez*, 166 F.4th at 507–08. In *Thuraissigiam*, the Supreme Court refused an alien's constitutional challenge to his removal proceedings, holding he was not entitled to due process beyond those Congress afforded by statute. 591 U.S. at 114–15, 139–40. With this, the Supreme Court highlighted the so-called "entry fiction," the principle that deportable aliens detained at the border are treated, for constitutional purposes, as never having entered the country. *Id.* at 107, 139–40. The Supreme Court reasoned that the *Thuraissigiam* petitioner squarely fell within the entry fiction doctrine—he was apprehended almost immediately and only 25 yards from the border. *Id.* at 114, 139. Importantly, it drew a distinction between "aliens who have established connections in this country" and those who had not. *Id.* at 107; *see also Bonilla Chicas*, 821 F. Supp. 3d at 796–97.

Accordingly, the Court is unconvinced *Thuraissigiam* bars Petitioner's claims. Petitioner brings an as-applied challenge to his *detention*, not to his *removal* proceedings. "While detention pending removal proceedings may be considered an 'aspect of the deportation process' it does not directly implicate Congress's 'sovereign prerogative . . . to decide which aliens to admit.'" *Strunin v. Garcia*, 827 F. Supp. 3d 976, 987 (S.D. Tex. 2026) (Saldaña, J.) (citation omitted). That is significant, as that "sovereign prerogative"

underpins the entry fiction doctrine. *Id.* (citation omitted). Moreover, as a United States resident for sixteen years, Petitioner is a far cry from the *Thuraissigiam* petitioner, who had not established roots in this nation and was apprehended nearly immediately, steps away from the border (Dkt. No. 8-1 at 7, ¶ 1; 14, ¶ 22). "Petitioner has lived with relative freedom in the United States for years and the Constitution does not countenance fictional erasure of their actual presence in this country—or their concomitant due process rights." *Id.* at 988 (citation omitted). "Entry and residence, not legal admission, dictate the extent of the Constitution's application," and Petitioner is entitled to Due Process Clause protections beyond § 1225(b)(2)(A). *Rodriguez*, 2026 WL 1906557, at *7.

*2. Procedure Due*

Once a litigant proves a liberty interest within the Fifth Amendment's protection, the court must determine what process is due. *Rodriguez*, 2026 WL 1906557, at *9 (quoting *Smith v. Org. of Foster Fams. for Equal. & Reform*, 431 U.S. 816, 847 (1977)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation modified). To consider the extent of the procedural due process violation, the Court examines the well-known *Mathews* factors.[4]

*a. The Private Interests*

For the first *Mathews* prong, the Court considers "the private interest that will be affected by the official action." 424 U.S. at 335. "The interest in being free from

[4] In *Landon v. Plasencia*, 459 U.S. 21 (1982), the Court applied the *Mathews* factors in an immigration-related matter, thus suggesting the lower courts are not expressly precluded from doing so. 459 U.S. at 34; *see also Black v. Decker*, 103 F.4th 133, 147–48 (2d Cir. 2024) (collecting circuit cases applying *Mathews* in the immigration context), *cert. granted sub nom.*, *Genalo v. Black*, No. 25-886, 2026 WL 1718025 (U.S. June 15, 2026).

imprisonment is the most significant liberty interest there is." *Bonilla Chicas*, 821 F. Supp. 3d at 798 (citation modified) (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)); *see also Rodriguez*, 2026 WL 1906557, at *14 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).

Here, Petitioner entered the United States **<u>sixteen years ago</u>** in 2010 (Dkt. No. 8-1 at 7, ¶ 1). He is married to a United States citizen and is the stepfather to six United States citizen children (Dkt. No. 8-1 at 7, ¶ 1). In March 2024, the Government issued him work authorization until 2029 (Dkt. No. 8-1 at 14, ¶ 22). His wife is tumor-ridded and relies heavily on him for financial and emotional support (Dkt. No. 8-1 at 14, ¶ 23). Outside of a minor traffic infraction, Petitioner has no criminal history (Dkt. No. 8-1 at 15, ¶ 25). To the contrary, he actively contributed to his community for years (Dkt. No. 8-1 at 15, ¶ 25). This first *Mathews* factor overwhelmingly weighs in Petitioner's favor.

*b. Cost-Benefit Analysis*

Next, the Court explores the cost-benefit analysis of "the risk of an erroneous deprivation" versus the probable value of additional safeguards. *Mathews*, 424 U.S. at 335. "[I]mmigration law has long recognized that noncitizens have an interest in an individualized hearing prior to detention in connection with immigration proceedings." *Singh*, 2026 WL 752457, at *13 (citing *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903)). However, § 1225(b)(2)(A)'s detention, without meaningful review at *any* point, no matter how long the detention lasts, plainly has a high risk of erroneous deprivation. *See id.* Indeed, Petitioner has been detained since December 23, 2025, without *any* individualized determination about his flight risk or dangerousness (Dkt. No. 8-1 at 7, ¶ 2). A bond hearing provides safeguards, which allows a neutral immigration judge to

decide whether to release Petitioner based on his specific characteristics. *Vieira v. de Anda-Ybarra*, 806 F. Supp. 3d 690, 701 (W.D. Tex. 2025).

What is more, the Supreme Court has stressed that deportation proceedings are "civil, not criminal, and . . . they are nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. "An individualized analysis ensures the purpose of detention is not punitive." *Singh*, 2026 WL 752457, at *13. The Court finds that the second *Mathews* factor weighs in Petitioner's favor.

*c. The Government's Interests*

Finally, the Court considers "the Government's interest, including the function involved and the fiscal and administrative burdens" associated with using different procedural safeguards. *Mathews*, 424 U.S. at 335. "To be sure, the Government has a weighty interest in removing deportable noncitizens." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 705 (S.D. Tex. 2025) (citation modified). It also has a vested interest in "ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live." *Vieira*, 806 F. Supp. 3d at 701. But nothing in the record suggests Petitioner will cause such problems. Indeed, the Government authorized Petitioner to work in the United States, implying he was not an obvious danger (Dkt. No. 8-1 at 14, ¶ 22). This factor weighs in favor of Petitioner.

*3. Remedy*

Petitioner seeks his immediate release. Other courts that have grappled with this issue ordered that relief. *Bonilla Chicas*, 821 F. Supp. 3d at 799; *Singh*, 2026 WL 752457, at *15. But given that the Court has found a *procedural* violation, the logical remedy is the procedure due: A hearing for an individualized determination of Petitioner's

characteristics pending release. After all, "[a]n immigration judge is in a better position to conduct the sort of individualized review that is necessary to determine if Petitioner should be released." *Angel v. Duke*, No. CV H-17-3172, 2017 WL 11698492, at *2 (S.D. Tex. Dec. 18, 2017) (citation omitted).

Accordingly, Respondents must provide Petitioner a bond hearing **within five business days of the date of this Order**. **In the event Respondents fail to comply in a timely manner, they must immediately release Petitioner**. *Rodriguez*, 2026 WL 1906557, at *17 (noting that the failure to provide a bond hearing would precipitate immediate release); *see Bravo-Marcatoma v. Vergara,* No. EP-26-CV-00634-DCG, 2026 WL 2045475, at *2 (W.D. Tex. July 10, 2026) (same).

"[A]t the hearing, the Government must articulate an individualized justification for further detention without bond." *Rodriguez*, 2026 WL 1906557, at *16. Obviously, dangerousness and flight risk may be relevant factors, but "the Government may be able to assert another justification why an unadmitted alien must be detained." *Id.* However, the Immigration Judge **may not** solely rest any denial of Petitioner's bond on lack of jurisdiction under *Buenrostro-Mendez*'s principles. *See Vieira*, 806 F. Supp. 3d at 702. Should they continue to disclaim jurisdiction, Respondents must **immediately** release Petitioner.

### C. Remaining Claims

The Court will not address Petitioner's other arguments, as "any relief he could

obtain . . . would be cumulative." *Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004).

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Writ of Habeas Corpus (Dkt. Nos. 1, 8-1) is **GRANTED IN PART**. All relief not expressly provided for in this Order is **DENIED**. Respondents' Motion for Summary Judgment is **DENIED** (Dkt. No. 9).

Respondents are further **ORDRED** to file an advisory **within five business days** of the bond hearing, stating whether Petitioner was released, and if so, detailing the conditions of his release.

It is so **ORDERED**.

**SIGNED** July 30, 2026.

Marina Garcia Marmolejo
United States District Judge